UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR. 2:08-449 WBS |
| Plaintiff, | |
| v. | ORDER RE: MOTION TO SUPPRESS |
| TONY QUY LE, HUNG THE LE, TIEN THE LE, MINH VIHN LE, AND CUONG THE LE, | |
| Defendants. | |

----oo0oo----

On September 16, 2008, evidence was seized from the home of defendant Tony Quy Le ("Tony Le") at 4080 Monteverde in Lincoln, California, pursuant to a search warrant. Tony Le now moves to suppress that evidence, arguing that the warrant was not supported by probable cause and that the affidavit in support of the warrant was so lacking in indicia of probable cause that official belief in its existence was objectively unreasonable. He also moves to suppress evidence seized pursuant to a warrant from 9335 Stablegate Road in Wilton, California, on the ground

1

that the discovery necessarily flowed from the allegedly defective September 16, 2008, search, and is thus the fruit of the poisonous tree. On January 4, 2011, the court held a Franks[1] evidentiary hearing on the motion.

I.   Findings of Fact

The following facts are undisputed and are taken from the affidavit in support of the application for the search warrant at issue, signed by Drug Enforcement Agency ("DEA") Special Agent Spencer Savage, and from Agent Savage's testimony at the hearing.

On August 3, 2007, officers from the Placer County Sheriff's Office executed a search warrant at 20995 Todd Valley Road in Foresthill, California. The search resulted in the seizure of approximately 1153 marijuana plants, among other pieces of evidence. Real estate records showed that Tony Le, a realtor, represented the owner in purchasing the home in 2007. Further investigation disclosed that Tony Le acted as the buyer's agent in the purchases of residences at 1640 High Street and 1740 High Street in Auburn, California. The purchasers were Hung The Le and Tien The Le, respectively. Four days after the search of the Todd Valley residence, which was owned by Tien The Le's wife, he transferred ownership of the 1740 High Street property to Mui Nhi Ly, his parent.

On August 22, 2007, the Auburn Police Department initiated an investigation on a suspected indoor marijuana-growing operation located at the High Street residences.

---

[1]   Franks v. Delaware, 438 U.S. 154 (1978).

2

1  Officers smelled a strong odor of marijuana while standing on the
2  sidewalk outside the 1640 High Street residence.  They discussed
3  the matter with two concerned citizens, who reported seeing
4  several vehicles at both locations and had observed a Toyota
5  Tacoma delivering lumber, PVC pipes, and soil to the 1640 High
6  Street residence.  The citizens also reported hearing
7  construction noises akin to hammering and sawing, and noticed
8  that the basement vents had been covered.  On August 28, 2007,
9  officers observed Tony Le leaving the 1640 High Street property
10 in his car.  The officers performed a traffic stop for a
11 mechanical violation, and then followed Tony Le back to his home
12 at 4080 Monteverde Drive in Lincoln, California.  Officers saw
13 the same car depart the 1640 High Street property on September 9,
14 2007.  Tony Le was observed at least one or two more times at the
15 High Street properties.
16         On September 19, 2007, officers responded to a possible
17 burglary in progress at 1740 High Street.  While inside the
18 residence attempting to locate the suspect, officers observed
19 construction, timers, and power boxes consistent with the
20 materials found in an indoor marijuana-growing operation.
21         On September 25, 2007, the Auburn Police Department
22 executed a state-authorized search warrant at 1640 High Street,
23 in which they located an indoor marijuana-growing operation
24 nearly identical to the operation at the Todd Valley residence.
25 They seized approximately 911 viable marijuana plants.
26         Tony Le also represented Kun A. Lo in purchasing a
27 residence at 349 Arches Avenue in El Dorado Hills, California,
28 which was suspected to contain indoor marijuana-growing

operations.  All of the homes purchased with the help of Tony Le had characteristics common to marijuana grow houses: they were built on a declining hill, had large unfinished basements not readily accessible from the front of the residence, and could "easily avoid police detection."

Based on this information, the government obtained a federal search warrant to search eight homes, including the Arches Avenue property and Tony Le's residence on Monteverde. The residences were described as "locations owned and operated as suspected indoor marijuana grows, or the current residences of those individuals involved in tending the indoor marijuana grow operations."  On September 16, 2008, law enforcement agents executed the search warrant.  Evidence seized from the search at the Monteverde residence included cash, cell phones, and documents, including documents associated with hydroponic equipment and a nutrient schedule.  Also seized were records pertaining to ownership of property at 9335 Stablegate Road in Wilton, California.  Discrepancies in the records led agents to begin surveillance on the property.  Agents observed Tony Le drive into the driveway of the property on October 15, 2008.  A search warrant was issued for the property, and approximately 1,031 marijuana plants were seized.

Tony Le now moves to suppress evidence from both of the searches.  He argues that the Monteverde search warrant was not issued with probable cause and that Special Agent Savage deliberately or recklessly omitted material facts from the affidavit.  He does not argue that the Stablegate warrant was issued without probable cause, but instead argues that the

4

1 evidence should be suppressed because it constitutes fruit of the
2 poisonous tree.
3 II.   Discussion
4     A.   Franks Hearing
5         On January 4, 2011, the court held a Franks hearing to
6 determine whether Special Agent Savage made deliberately or
7 recklessly false statements or omissions in the warrant
8 affidavit.  In Franks v. Delaware, 438 U.S. 154 (1978), the
9 Supreme Court held that if, after hearing, a defendant
10 establishes by a preponderance of the evidence that a false
11 statement was made by the affiant in an affidavit in support of a
12 search warrant, and that the statement was made knowingly and
13 intentionally or with reckless disregard for the truth, the court
14 should set the false material aside and determine whether "the
15 affidavit's remaining content is insufficient to establish
16 probable cause,"  id. at 155-56, meaning that the "false
17 statement was necessary to the magistrate's finding of probable
18 cause."  United States v. Tham, 960 F.2d 1391, 1395 (9th Cir.
19 1991).  If so, "the search warrant must be voided and the fruits
20 of the search excluded to the same extent as if probable cause
21 was lacking on the face of the affidavit."  Franks, 438 U.S. at
22 156.
23         A defendant may also challenge a facially valid warrant
24 that contains deliberate or reckless omissions of material facts
25 that tend to mislead.  See Tham, 960 F.2d at 1395.  A
26 misrepresentation based on an omission is material only where the
27 omitted facts, if added to the affidavit, would "cast doubt on
28 the existence of probable cause."  United States v. Garza, 980

1  F.2d 546, 551 (9th Cir. 1992) (internal quotation marks omitted).
2         Tony Le argues that two omissions in the affidavit are
3  material and were deliberately or recklessly omitted: First,
4  Special Agent Savage did not mention that "Tony Le is the brother
5  or uncle to most of the key characters within the affidavit."
6  (Mem. of P. & A. in Supp. of Mot. for Franks Hearing at 3:18-19.)
7  Second, the affidavit does not mention that "surveillance of Tony
8  Le's Monteverde home had taken place and revealed nothing
9  suspicious."  (Id. at 3:19-20.)
10        The court heard the undisputed testimony from Special
11 Agent Savage that he did not know that Tony Le was the brother or
12 uncle of the other parties at the time he filed the affidavit.
13 Such an omission cannot be considered deliberate or reckless;
14 indeed, including information in the affidavit about which an
15 affiant was not certain would have been much more serious than
16 the omission at issue.  Furthermore, the omission was not
17 material.  The inclusion of Tony Le's family relationships with
18 the home buyers would not have cast doubt on the existence of
19 probable cause.  Tony Le has the same surname as many of the
20 other parties mentioned in the affidavit, and the magistrate
21 judge may have surmised that the parties were somehow related.
22 Even knowing that they were related would not have diminished
23 probable cause.  While Tony Le's visits to the High Street
24 properties may have seemed less suspicious if they were merely
25 visits to his brothers, his alleged facilitation of the purchases
26 of marijuana grow homes is suspicious whether or not his clients
27 were also relatives.  Indeed, the close family relations might
28 even indicate a deeper involvement in the alleged crimes than

would be apparent if Tony Le was simply a detached broker.  Tony Le has not shown by a preponderance of the evidence that the omission of his family relations was deliberate or reckless or that the information was material.

The omission of information regarding surveillance on the Monteverde residence is similarly immaterial.  While the dearth of incriminating evidence found from the outside surveillance might make it less likely that evidence would be found inside the house, it does not negate probable cause.  Agent Savage testified that it is not at all unusual for drive-by surveillances such as these not to yield any information of value  Tony Le's home was not suspected to be a grow site, so it is immaterial that marijuana-growing materials were not found outside the home.  Instead, the officers were hoping to find documentation related to the marijuana-growing operations taking place at the homes for which Tony Le brokered the sales, as well as documentation connecting Tony Le with any of the residences use for the marijuana-growing; these sorts of documents are unlikely to be detected by outside surveillance.  Furthermore, Tony Le has failed to show that the government intentionally or recklessly omitted the information.  Affidavits cannot contain every fact from every investigation that failed to unearth evidence, and as he informed the magistrate on page 11, paragraph 2, of his Affidavit, Agent Savage did not purport to do so here.

Since Tony Le has not established by a preponderance of the evidence that Special Agent Savage's omissions were material and intentional or reckless, the court finds that the warrant was not defective on the basis of the omissions.

B. <u>Probable Cause</u>

Tony Le argues that the warrant for the Monteverde property was not supported by probable cause. Under the Warrants Clause of the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists to support a search warrant when "considering the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" <u>United States v. Ocampo</u>, 937 F.2d 485, 490 (9th Cir. 1991) (quoting <u>United States v. Rodriquez</u>, 869 F.2d 479, 484 (9th Cir. 1989)); see <u>United States v. Gourde</u>, 440 F.3d 1065, 1069 (9th Cir. 2006) (Probable cause means "fair probability, not certainty or even preponderance of the evidence.") (internal quotation marks omitted). A magistrate judge makes this determination "on the basis of practical, common-sense considerations." <u>Ocampo</u>, 937 F.2d at 490. There must also exist a "reasonable nexus between the activities supporting probable cause and the locations to be searched." <u>Id.</u>

"A magistrate's determination of probable cause should be paid great deference by reviewing courts." <u>Illinois v. Gates</u>, 462 U.S. 213, 236 (1983) (internal quotation marks omitted); see <u>Millender v. Cnty. of L.A.</u>, 620 F.3d 1016, 1024 (9th Cir. 2010). "Deference to the magistrate, however, is not boundless." <u>United States v. Leon</u>, 468 U.S. 897, 914 (1984). Courts should not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining

8

the existence of probable cause.'"  Id. at 915 (quoting Gates, 462 U.S. at 239); see United States v. Clark, 31 F.3d 831, 834 (9th Cir. 1994).

        The affidavit at issue included information showing that Tony Le acted as a realtor for two known and two suspected marijuana grow houses, all of which shared characteristics common to marijuana grow houses like unfinished basements that could not be seen from the front of the house.  Officers also observed Tony Le later leaving one of the houses through the garage, suggesting more than just a realtor-purchaser relationship with the occupants.  Special Agent Savage noted in the affidavit that in his experience, the search of a drug co-conspirator's house, even if not a grow site itself, could result in the seizure of multiple cell phones, large sums of cash, incriminating documents, and other items consistent with the drug trafficking trade.  (Savage Affidavit at 3-6); see United States v. Dubrofsky, 581 F.2d 208, 213 (9th Cir. 1978) (holding that a magistrate may draw reasonable inferences about the location of evidence based on its nature and the type of offense).

        While the year-long period between the search of the 1640 High Street residence and the search at issue here is significant, it does not destroy probable cause.  There is no reason to think that the kind of documentary evidence sought here would have been destroyed in that time period.  See United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991) ("One may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time. When the evidence sought is of an ongoing criminal business of a

1 necessarily long-term nature, such as marijuana growing, rather
2 than that of a completed act, greater lapses of time are
3 permitted if the evidence in the affidavit shows the probable
4 existence of the activity at an earlier time.") (internal
5 citations omitted).  Based on the information in the affidavit,
6 this court concludes there was probable cause for the issuance of
7 the warrant.

    C.   Good Faith

         Even if the search warrant was invalid, the good faith
exception would apply here.  In United States v. Leon, 468 U.S.
897 (1984), the Supreme Court held that when an officer acts "in
the objectively reasonable belief that [his] conduct did not
violate the Fourth Amendment," evidence seized under the
authority of a search warrant that is later invalidated should
not be suppressed.  Id. at 918.  The Court defined its test as an
objective one, but one which "requires officers to have a
reasonable knowledge of what the law prohibits."  Id. at 919
n.20.

         While it recognized that each inquiry would be fact-
specific, the Court found four situations in which reliance on an
invalidated warrant could not be deemed to be in good faith: (1)
the affiant knowingly or recklessly misleads the magistrate with
false information or material omissions; (2) the magistrate
"wholly abandoned his judicial role;" (3) the affidavit is "so
lacking in indicia of probable cause as to render official belief
in its existence entirely unreasonable," and (4) the warrant
itself is facially deficient in its description of the place to
be searched or the things to be seized.  Id. at 923; see id. at

10

922 n.23 (The appropriate question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.").

Here, defendant argues that the affidavit did not establish "a colorable argument for probable cause" (citing United States v. Luong, 470 F.3d 898, 903 (9th Cir. 2006). This standard is met, however, if the affidavit provides "evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." Leon, 468 U.S. at 926. For the reasons discussed above, this court cannot find that Special Agent Savage's belief in the existence of probable cause was "entirely unreasonable." Tony Le acted as the realtor for two known marijuana grow houses and two other suspected marijuana grow houses, and he was seen at the homes on multiple occasions.

It was, in fact, entirely reasonable for Special Agent Savage to believe that evidence would be found in Tony Le's home. For example, he stated in the affidavit that he was advised by Internal Revenue Service Special Agent Charles Phillips that persons engaged in fraudulent transactions often maintain their records for long periods of time. As discussed above, Agent Savage did not knowingly or recklessly mislead the magistrate with false information or material omissions. Nor did the magistrate "wholly abandon his judicial role." The warrant sufficiently described the place to be searched and the things to be seized. Thus, even if there was not probable cause to support the warrant, the good faith exception applies and Tony Le's motion to suppress must be denied.

Because the court determines that the search of the Monteverde residence was not unlawful, it is unnecessary to reach the government's contention that the evidence seized from the Stablegate property was subject to the inevitable discovery doctrine.

IT IS THEREFORE ORDERED that defendant's motion to suppress be, and the same hereby is, DENIED.

DATED: January 4, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE